## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| **ESTHER RHODES,** | * | |
|   **as Surviving Spouse and Personal** | | |
|   **Representative of the Estate of** | * | |
|   **Earl J. Rhodes, deceased,** *et al.***,** | | |
| | * | |
|     **Plaintiffs** | | |
| | * | |
|     **v.** | | **CIVIL NO.  JKB-16-2459** |
| | * | |
| **MCIC, INC.,** *et al.***,** | | |
| | * | |
|     **Defendants** | | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM  AND  ORDER

### I.  Background

Plaintiffs, who are surviving family members of Earl J. Rhodes, deceased, filed their complaint in this asbestos case against thirty-two Defendants in the Circuit Court for Baltimore City.  (Compl., ECF No. 2.)  The case has been removed to this Court by Crane Co. pursuant to 28 U.S.C. § 1442, which permits removal to federal court for cases involving the "federal officer defense."  (Notice of Removal, ECF No. 1.)  Now pending before the Court is Plaintiffs' motion to remand or, in the alternative, for severance of all claims other than Plaintiffs' claims against Crane Co. and to remand all other severed claims.  (ECF No. 154.)  The motion has been briefed (ECF Nos. 185, 186), and no hearing is required, Local Rule 105.6 (D. Md. 2016).  The motion will be denied.

## II.  Applicable Law

As pertinent to the instant case, the federal officer defense is set forth in 28 U.S.C. § 1442(a), which provides,

> A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

When applied to contractors that supply goods to the federal government, the federal officer defense is also referred to as the government contractor defense.  That extension of the federal officer defense was recognized in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988).  There, the Supreme Court set forth the defense's contours:

> Liability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.

*Id.* at 512.  "[W]hether the facts establish the conditions for the defense is a question for the jury."  *Id.* at 514.

Although the *Boyle* case only dealt with design defects, the defense has also been applied to failure-to-warn cases.  *See, e.g., Cuomo v. Crane Co.*, 771 F.3d 113, 116-17 (2d Cir. 2014); *Leite v. Crane Co.*, 749 F.3d 1117, 1123 (9th Cir.), *cert. denied*, 135 S. Ct. 361 (2014); *Citrano v. John Crane-Houdaille, Inc.*, 1 F. Supp. 3d 459, 467 (D. Md. 2014).  *See also Emory v. McDonnell Douglas Corp.*, 148 F.3d 347, 349-50 (4th Cir. 1998) (agreeing with soundness of

reasoning in cases applying defense to failure-to-warn claims).  To establish the defense in a failure-to-warn case,

> the defendant must show:  "(1) the government exercised its discretion and approved certain warnings for the products; (2) the warnings provided by the contractor conformed to the federal specifications; and (3) the contractor warned the government about dangers known to the contractor but not to the government."

*Citrano*, 1 F. Supp. 3d at 467 (quoting *Joyner v. A.C. & R. Insulation Co.*, Civ. No. CCB-12-2294, 2013 WL 877125, at *7 (D. Md. Mar. 7, 2013), *aff'd sub nom.*, *Wood v. Crane Co.*, 764 F.3d 316 (4th Cir. 2014), *cert. denied*, 135 S. Ct. 1426 (2015)).

To justify removal to federal court, the defense must be "colorable," *see Mesa v. California*, 489 U.S. 121, 129 (1989), and the removing defendant must establish a causal connection between the allegedly wrongful conduct and "asserted official authority," *Willingham v. Morgan*, 397 U.S. 402, 409 (1969).  The Supreme Court has "rejected a 'narrow, grudging interpretation' of the statute, recognizing that 'one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court.'"  *Jefferson Cty., Ala. v. Acker*, 527 U.S. 428, 431 (1999) (quoting *Willingham*, 395 U.S. at 407).  A defendant's theory of the case must be credited by the federal court for the purposes of determining the existence of the elements of the jurisdictional inquiry.  *Id.* at 432.

Consequently, evaluation of the defense's viability at this early stage of the case, *i.e.*, upon removal, is similar to evaluation of the adequacy of a complaint for relief when challenged by a motion to dismiss.  *See Willingham*, 395 U.S. at 408 (noting a removal petition must contain "a short and plain statement of the facts"); *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 199 (4th Cir. 2008) (language in general removal statute, 28 U.S.C. § 1446(a), "is deliberately parallel to the requirements for notice pleading found in Rule 8(a) of the Federal

Rules of Civil Procedure"); *Joyner*, 2013 WL 877125, at *5-6 (noting parallelism between plausibility standard for asserting government contractor defense and plausibility standard for pleading complaint).   A defendant need not prove his entitlement to the defense in order to remove the case to federal court; he need only make a plausible showing of it.  *Willingham*, 395 U.S. at 407 ("The officer need not win his case before he can have it removed.").  Cases dwelling on the exactness of "proof" or "evidence" to support the defense are not persuasive.  *See, e.g.*, *Zeringue v. Allis-Chambers Corp.*, Civ. No. 15-4516, 2015 WL 9311967 (E.D. La. Dec. 23, 2015); *Sroka v. Union Carbide Corp.*, Civ. No. WDQ-13-3281, 2015 WL 794942 (D. Md. Feb. 24, 2015); *Holdren v. Buffalo Pumps, Inc.*, 614 F. Supp. 2d 129 (D. Mass. 2009).

### III.  Asserted Factual Basis for the Defense

According to the complaint, the decedent served in the U.S. Navy as a laborer and boilermaker from 1952 to 1956 onboard ships, including the USS Tarawa CV40.  (Compl. ¶ 1.) After discharge from the U.S. Navy, Rhodes was employed as a laborer, welder, and boilermaker at Bethlehem Steel Sparrows Point Shipyard from 1956 to 1959, and later, from 1959 to 1963, he was employed as a laborer at Eastern Stainless Steel.  (*Id.*)   He also worked as a laborer, mechanic, and salesman for several other businesses from 1963 to the late 1970s.  (*Id.*)  Prior to his death, Rhodes suffered from mesothelioma and asbestos-related diseases.  (*Id.*)  Plaintiffs claim damages "[a]s a direct and proximate result of Defendants' negligence and strict liability in causing" Rhodes's death.  (*Id.* Wrongful Death Count ¶ 4.)  The complaint is noticeably bereft of plausible allegations of fact allowing an inference of liability as to any Defendant.  However, no Defendant has moved for dismissal for failure to state a claim for relief.

According to the notice of removal, Rhodes allegedly was exposed to Crane Co. products while working aboard a Navy vessel.  (Notice ¶ 3.)  Crane Co. then states,

> any product that Plaintiffs allege Crane Co. manufactured for or supplied to the
> Navy (and any product literature, labeling, or warnings that accompanied that
> product) would be subject to Navy specifications and requirements.   Federal
> officers exercised their discretion regarding whether (1) asbestos was used in the
> product and (2) whether a warning would accompany the product (and if so, what
> it would say).   Without approval from a federal officer, Crane Co.'s products
> could not have been used by the Navy.

(*Id.*)  Crane Co. also filed an affidavit of Anthony D. Pantaleoni, who, at the time he made the

affidavit in 2011, was the Vice-President of Environment, Health, and Safety for Crane Co.

(Pantaleoni Aff. ¶ 1, June 7, 2011, ECF No. 2-2.)  Pantaleoni stated therein,

> Crane Co. made and supplied equipment, including valves, for Navy ships
> under contracts between Crane Co. and the shipyards and/or the United States of
> America, specifically the Navy Department.

> The manufacture of equipment for use on Navy vessels was governed by
> an extensive set of federal standards and specifications, chiefly military
> specifications known as Navy Specifications and later "MilSpecs."  The MilSpecs
> governed all aspects of a piece of equipment, such as a valve's, design and
> construction and specified the materials to be used, including materials such as
> gaskets and packing used in equipment.  . . .

> All equipment supplied by Crane Co. to the Navy was built in accordance
> with the Navy specifications.

(*Id.* ¶¶ 4, 5, 6.)

In addition, Crane Co. filed an affidavit of David P. Sargent, Jr., who retired as a Rear

Admiral of the United States Navy, having served from 1967 to 1999.  (Sargent Aff. ¶ 1, May 7,

2012, ECF No. 2-4.)  He stated,

> As a Navy engineering officer and program manager, I was often called
> upon to assist in determining conformance of shipbuilders and equipment vendors
> to drawings and specifications prior to acceptance by the Navy. . . .

> I am knowledgeable from my own Navy service, and also from my
> education, training, research and experience with the historical practices and
> procedures employed by the Navy in the design and construction of vessels and
> the operation of its vessels and facilities.

> . . .

. . . During World War II and well into the 1960s, virtually all equipment that was to be installed in warships was procured by the Navy and provided to the building shipyard as government-furnished equipment.

. . .

. . . Specifications for any equipment intended for use aboard Navy ships were drafted, approved and maintained by the Navy.

. . .

. . . [T]hroughout the World War II and post-World War II era, the vast majority of thermal insulating materials used aboard Navy vessels contained asbestos.

. . .

Due to the complexities of the ship design and construction process, and the global nature of the Navy's approach to selection and procurement of insulation and lagging materials, manufacturers of components were not consulted by the Navy with respect to insulation of their equipment. Moreover, they had no control over the types and quantities of insulation products to be used in conjunction with their equipment, nor could they even be certain whether or not any insulation would, in fact, be applied to their equipment due to the variety of circumstances and potential uses of the original equipment once aboard a Navy vessel.

Above and beyond the tens or hundreds of tons of thermal insulation used, other asbestos materials were ubiquitous aboard Navy vessels pursuant to Navy specifications and requirements. These materials included electrical insulating materials, flooring, refractories and sealing materials.

. . .

. . . [T]he Navy developed precise specifications as to the nature of any markings, communication or directions affixed to or made a part of any equipment supplied by [Original Equipment Manufacturers, "OEMs"] for ultimate use aboard Navy ships. OEMs would not have been permitted, under the specifications, associated regulations and procedures, nor under the actual practice as it evolved in the field to vary or to deviate in any respect from the Navy specifications in supplying equipment, including affixing any type of warning or caution statement to equipment intended for installation in a Navy ship, beyond those specifically required by the Navy without prior discussion and express approval by the Navy.

. . .

. . . Consistent with its objective to ensure that all documentation to which its personnel were exposed be thoroughly consistent with its overall training and procedures, the Navy would not have permitted equipment suppliers to place asbestos-related warnings on packaging or containers for valves and pumps or related parts or items supplied during the 1940s, 1950s, or 1960s.

(*Id.* ¶¶ 4, 5, 23, 27, 41, 44, 45, 58, 63.)

Finally, Crane Co. also filed an affidavit of Samuel A. Forman, M.D., who served in the

Navy from 1973 to 1983 and worked as a civilian employee of the Navy until 1986.   (Forman

Aff. ¶¶ 2, 3, May 3, 2012, ECF No. 2-20.)  He stated,

In 1983, a JAG officer for the Naval Medical Command requested that I become part of a team to locate, digest and organize government documents for production in asbestos litigation.  Over the next year and a half, I investigated the Navy's historical handling and knowledge of various industrial hygiene issues, including asbestos disease.

From my review of countless Navy documents and my studies while employed by the Navy, I acquired extensive knowledge as to the state of Navy knowledge and awareness regarding the hazards of asbestos.

. . .

. . . [R]egarding asbestos—as with many other health and safety issues— there was extensive information regarding potential hazards and potential protective measures that were consciously not shared with the vast majority of Navy personnel who were deemed not to have a need to know.

. . .

. . .[A]t least by the early 1940s, the Navy had become a leader in the field of occupational medicine relating to, among other things, asbestos dust inhalation exposure.

As early as 1922, the Navy recognized, as exemplified by its instructions to officers published in the *Navy Medical Bulletin*, the health hazards associated with airborne asbestos dust and the appropriate protective measures to prevent asbestos exposure. . . . The Navy's knowledge of potential asbestos-related health problems, and of the means to control against them, continued to expand throughout the following decades . . . .

. . .

The Minimum Requirements [for Safety and Industrial Health in Contract Shipyards, issued jointly by the Navy and the United States Maritime Commission in 1943] identified asbestos-related disease as a potential hazard of shipyard work, explaining that exposure could result from handling, sawing, cutting, molding and welding rod salvage around asbestos or asbestos mixtures. … The Minimum Requirements also warn that jobs involving exposure to asbestos require "respiratory protective equipment," in particular a "dust respirator." . . .

The Minimum Requirements further called for employee safety training[.] . . . The type of safety posters used in these worker educational campaigns included materials reinforcing the use of masks for protection against disease-causing dusts. . . .

(*Id.* ¶ 9, 11, 22, 26, 27, 36, 37, 38.)   Dr. Forman provided many other examples over the succeeding decades of the Navy's extensive knowledge of disease caused by asbestos, methods to prevent it, and the importance of requiring precautionary measures by Navy personnel dealing with asbestos.  (*See id.* ¶ 40 *et seq.*)

## IV.  *Analysis*

### A.  *Motion to Remand*

In their motion to remand, Plaintiffs argue the federal officer defense has not been established.  They fault Crane Co. because it

provides no evidence to support its allegation that Plaintiff [*sic*] Earl Rhodes was exposed to Crane Co.'s asbestos-containing products while serving in the Navy at a jobsite where the products were being used, installed and/or replaced and that the products and its labeling/packaging were under the complete and direct control of the federal government.

(Pls.' Mot. Remand 2, ECF No. 154.)[1]  Given the dearth of specific allegations in Plaintiffs' complaint regarding any specific product of any particular Defendant, the Court cannot fault Crane Co. for not providing the kind of specificity desired by Plaintiffs.  Crane Co. is clearly

---

[1]  The reference to "Plaintiff Earl Rhodes" is in error.  The instant suit was filed after his death, and he was never a Plaintiff in the case.

anticipating that the course of discovery may flesh out what are now, at best, Plaintiffs' conclusional allegations.

Plaintiffs also assert, with no factual support, that "the Navy did not exercise any control over warnings and exercised no discretion over warnings relating to Crane Co.'s products which were supplied to the Navy."  (*Id.*)   In fact, Crane Co. has provided ample support for the proposition in its Notice of Removal and in the affidavits supplied therewith to the effect that the Navy exercised strict control over the inclusion or affixing of warnings to any product of any kind supplied to the Navy.

Plaintiffs also contend that Crane Co. made no assertion or provided proof that it warned the Government about possible asbestos hazards from its products.  (*Id.*)  They further contend that Crane Co. has not provided argument that the federal government had sufficient knowledge about its knowledge of asbestos hazards, that the Navy prohibited or limited Crane Co. from providing warnings about asbestos hazards, or that the Navy exercised any discretion on the point.  (*Id.* 3.)   Under the governing standard, a warning from Crane Co. to the Navy about asbestos hazards would only have been necessary if Crane Co. had more knowledge than the Navy about those hazards.  Dr. Forman's affidavit provides a wealth of information indicating the Navy was a leader in the field of occupational health, including that specifically relating to asbestos hazards and the employment of various measures to prevent exposure to asbestos.  And the Notice of Removal states, "The Navy, as one of the leaders in industrial hygiene state of the art, possessed knowledge regarding the hazards of asbestos equal to or superior to its equipment suppliers, such as Crane Co."  (Notice 4-5.)  Consequently, Crane Co. was not required to warn the Navy about asbestos hazards.  Additionally, the various affidavits establish the discretion exercised by the Navy over its suppliers as to the placement and content of warnings on their

products; moreover, according to what is before the Court, the Navy exercised that discretion in a strict manner, requiring absolute adherence to MilSpecs.

Next, Plaintiffs argue Crane Co. has provided "no proof of a causal nexus between [Rhodes's] exposure claims and the responsibility for warnings on products manufactured by Crane Co. that allegedly were being controlled and/or created under the direction of the federal government." (Pls.' Mot. Remand 3.) As did Judge Blake in the *Joyner* decision, the undersigned concludes that the "'causal nexus' requirement is ordinarily satisfied whenever the removing defendant is able to establish a colorable government contractor defense." 2013 WL 877125, at *9. Crane Co.'s established colorable defense in this case necessarily subsumes the inquiry as to whether a causal nexus existed between Rhodes's exposure to Crane Co.'s products and the control and direction exercised by the federal government over the existence and content of warnings on those products.

The Plaintiffs further mention their "disclaimer" in their complaint of "any cause of action or claim for recovery that could give rise to federal subject matter jurisdiction under either 28 U.S.C. § 1331 (federal question) or 28 U.S.C. § 1442, subdivision (a)(1) (federal officer)" (Compl. 9-10), implicitly suggesting no federal jurisdiction exists. (Pls.' Mot. Remand Supp. Mem. 1-2.) Specifically, Plaintiffs "disclaim[] any cause of action or claim for recovery based on any exposure to asbestos caused by any person or entity acting under the authority of a federal officer or agency," but they also assert,

> . . . to the extent that Plaintiff was exposed to asbestos aboard a vessel of the United States Navy or in the construction, maintenance and/or repair of United States military vessels, Plaintiff's product liability claims against manufacturers, sellers, and suppliers of asbestos-containing products installed on such vessels and/or aircraft **are based solely on the failure to warn, and not on any defects in design**.

(Compl. 10 (emphasis added).)  They have cited no authority that allows such language to bar the assertion of the federal officer defense where it is otherwise applicable.  Moreover, the "disclaimer" is qualified by the assertion that Plaintiffs are only suing suppliers of asbestos-containing products to the Navy under a failure-to-warn theory.  (*Id.*)  Thus, they are clearly keeping in play a claim against Defendants who could legitimately assert the federal officer defense.  *See Despres v. Ampco-Pittsburgh Corp.*, 577 F. Supp. 2d 604, 607-08 (D. Conn. 2008) (plaintiffs' purported disclaimer of any claims subject to federal officer defense ineffective given their failure to waive all instances of asbestos exposure to defendant's products while in Navy service).  Since the Court has already determined that the government contractor defense is applicable to failure-to-warn cases, Plaintiffs' purported distinction between design-defect cases and failure-to-warn cases makes no difference in the Court's analysis.  Crane Co. has validly claimed the defense and, consequently, properly removed the case to federal court.  The motion to remand will be denied.

### B.  Motion to Sever

Plaintiffs request, in the event the Court determines it has jurisdiction over the case, that the Court sever all non-Crane Co. claims from the case and remand them to state court.   This request, with no supporting argument other than to make a passing reference to the *Joyner* decision (Pls.' Mot. Remand Supp. Mem. 7; Pls.' Reply 5, ECF No. 186), is not well founded.

Having concluded the Court possesses jurisdiction over the case, the Court also concludes the non-Crane Co. claims are properly within the jurisdiction of this Court by virtue of 28 U.S.C. § 1367(a), which provides,

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, **the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original**

> **jurisdiction that they form part of the same case or controversy under Article III** of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

(Emphasis added.)

It is beyond question that the non-Crane Co. claims are "so related to" the Plaintiffs' claims against Crane Co. "that they form part of the same case or controversy under Article III." Plaintiffs' complaint, which sets forth only one count, is premised upon the notion of Defendants' joint and several liability for Rhodes's asbestos disease.

However, even when the Court properly possesses supplemental jurisdiction over nonfederal claims, it remains within the Court's discretion to decide whether to retain jurisdiction over those claims.  The Court's exercise of discretion is guided by § 1367(c) and case law.  Section 1367(c) provides,

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if-
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3)  the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Plainly, neither (1), (3), nor (4) applies to the instant case.  The question arises as to whether Plaintiffs' suit against the Defendants other than Crane Co. "substantially predominates over the claim over which the district court has original jurisdiction."  As earlier noted, the complaint only contains one count against all Defendants.  Plaintiffs suggest that count should be subdivided by the Court in order to find that the portion of it against the non-Crane Co. Defendants should be remanded, apparently on the theory that the part of their claim against the other Defendants "predominates" over the part against Crane Co.  The count is premised entirely

12

upon Maryland state law, including their assertion of liability against Crane Co.  It is only Crane Co.'s assertion of the federal officer defense that distinguishes it from its fellow Defendants.

The undersigned is aware that Judge Blake concluded in *Joyner* that the claims against the defendants who did not assert the federal officer defense predominated against the one defendant who had asserted the defense, 2013 WL 877125, at *9-10,[2] and does not necessarily disagree with her conclusion.  However, even if the portion of Plaintiffs' suit against the non-Crane Co. Defendants can be said to predominate over the portion against Crane Co., that would not be the only determinative factor in the Court's exercise of discretion as to retention of jurisdiction in the rest of the case.

When the exercise of discretion under § 1367(c) "involves the additional question of whether to remand the case to State court, the federal court should consider 'principles of economy, convenience, fairness, and comity' and whether the efforts of a party in seeking remand amount to a 'manipulative tactic.'"  *Hinson v. Norwest Fin. S. Carolina, Inc.*, 239 F.3d 611, 617 (4th Cir. 2001) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988)).  Plaintiffs ignore this necessary part of the analysis and provide no argument whatsoever as to the "economy, convenience, fairness, and comity" resulting from the severance and remand of the Plaintiffs' claim against the non-Crane Co. Defendants.

A distinguishing factor in this case that was not addressed in the *Joyner* opinion is the presence of cross-claims by all Defendants against all other Defendants, including Crane Co.  The federal officer defense is necessarily implicated in each of these cross-claims for the same reason it is implicated in Plaintiffs' claim against Crane Co.  The obvious result of severance and remand is that two cases would be proceeding simultaneously in two different courts, which is

---

[2] The appellate opinion in *Joyner* by the United States Court of Appeals did not address  the district court's severance and remand of similar claims.  *See Wood*, 764 F.3d at 320.

antithetical to economy, either as to judicial resources or the litigants' resources.  Nor is it fair to Crane Co. to litigate its defense simultaneously in two fora.[3]  The only just course is to retain all cross-claims along with Plaintiffs' claim against Crane Co.  In that event, it makes no sense to sever Plaintiffs' claim against the remaining Defendants.  For that reason, the motion in the alternative for severance and remand of all non-Crane Co. claims will be denied.

## V.  Conclusion

The Court concludes this case was properly removed to federal court under 28 U.S.C. § 1442.  Further, the Court declines to exercise its discretion to remand any claims that do not fall within the Court's original jurisdiction.  Plaintiffs' motion (ECF No. 154) IS DENIED.

This case is now ready for a scheduling order.  Counsel for the parties shall confer and file by October 12, 2016, a proposed scheduling order for all further proceedings with the exception of a trial, pretrial conference, and briefing schedule for motions *in limine*.

DATED this 29th day of September, 2016.


BY THE COURT:


_____/s/_____
James K. Bredar
United States District Judge

---

[3]  Indeed, the breadth of § 1442(a)'s term "civil action" that may be removed pursuant to the statute is apparent from § 1442(d)'s definition, indicating the term "include[s] any proceeding (whether or not ancillary to another proceeding) to the extent that in such proceeding a judicial order, including a subpoena for testimony or documents, is sought or issued."  It follows, then, that a cross-claim could be considered within that definition. Additionally, who can remove under § 1442 is not limited to a "defendant," as it is in § 1441; rather, § 1442(a) simply allows for removal of a civil action "that is against or directed to . . . any person acting under" a federal officer.  That broad statement would allow a cross-claim defendant to remove the cross-claim to federal court.  The logical conclusion is that all cross-claims against Crane Co. must stay in federal court.

14